IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 09-12869 (JVA) |
| SENCORP, et al.,[1] | ) | (Joint Administration Requested) |
| | ) | |
| | ) | Honorable J. Vincent Aug, Jr. |
| Debtors. | ) | |
| | ) | |

**APPLICATION OF THE DEBTORS TO EMPLOY AND RETAIN
MORRIS-ANDERSON & ASSOCIATES LTD. AS FINANCIAL ADVISORS FOR THE
DEBTORS AND DEBTORS-IN-POSSESSION**

**("MA&A RETENTION APPLICATION")**

The above-captioned debtors and debtors-in-possession (collectively, the **"Debtors"**) hereby apply to this Court (the **"Application"**) (i) for entry of an interim order (the **"Interim Order"**), in substantially the form attached hereto as Exhibit A, authorizing the Debtors to employ and retain Morris-Anderson & Associates Ltd. (**"MA&A"**) as financial advisors for the Debtors and Debtors-in-Possession, effective as of the Petition Date (as defined below), (ii) for the scheduling of a final hearing (the **"Final Hearing"**) to consider entry of a final order (the **"Final Order"**) in substantially the form attached hereto as Exhibit B, authorizing the Debtors to employ and retain MA&A as financial advisors for the Debtors and Debtors-in-Possession, effective as of the Petition Date and (iii) for entry of the Final Order. The Debtors seek to employ and retain MA&A pursuant to the terms of the engagement letter dated March 16, 2009 between MA&A and the Debtors, a copy of which is attached hereto as Exhibit C (the

---

[1] The Debtors in these Chapter 11 cases are: SENCORP, Senco Products, Inc., Senco Export, Inc., SenSource Global Sourcing, LLC, TyRex, LLC, Global Fastening Solutions, LLC, Agrifast, LLC, Nexicor, LLC, Omnifast, LLC, S C FINANCIAL, INC., Senco International, Inc., Sentron Medical, Inc., and Gregg Laboratories, Inc.

"**Engagement Letter**"). In support of this Application, the Debtors submit the Affidavit of David E. Mack (the "**Mack Affidavit**," attached hereto as Exhibit D). In support, the Debtors respectfully state:[2]

## JURISDICTION

1.  This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief sought herein are Sections 327(a) and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "**Bankruptcy Code**") and Rules 2014(a) and 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

3.  The Debtors commenced these above-captioned cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on May 8, 2009 (the "**Petition Date**"). Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their affairs as debtors-in-possession. As of the date hereof, no creditors' committee, trustee or examiner has been appointed in any of these Chapter 11 Cases.

4.  The Debtors are a group of privately-held companies that collectively constitute a leading designer, manufacturer and distributor of branded pneumatic and battery powered staplers, nailers and screw systems and collated staples, nails and screws. The Debtors' brand names are well-known in the industry for quality, reliability and service. The Debtors sell to a

---

[2]   The facts and circumstances supporting this Application are further set forth in the Affidavit of David T. Fyffe, Vice President-Corporate Financial Operations and Treasurer of SENCORP, in Support of First Day Motions (the "**First Day Affidavit**"), filed contemporaneously herewith.

2

diversified customer base, including pro trades, industrial, consumer, international and commercial customer segments. Certain aspects of the Debtors' businesses, including the SENCO name, have existed for over 50 years. As further evidence of the Debtors' long-term success, most of the Debtors' top ten customers have purchase products from the Debtors for more than 20 years.

5. Despite the Debtors' historical strength, the Debtors have not been immune to the recent widespread economic downturn. Over the past several years, the Debtors' sales volume and profitability have been negatively impacted by several economic factors, including (a) the sharp rise in the price of steel rod (the Debtors' primary raw material) to historic levels in 2008, (b) a severe decline in residential and commercial construction (the Debtors' primary customer segments) and (c) the deteriorating economic conditions leading to the current recession.

6. In response to these economic challenges, the Debtors implemented several critical initiatives in 2008 and early 2009. Among other things, the Debtors have implemented significant workforce reductions, as well as significant pay reductions for all of the Debtors' remaining employees, including senior management. The Debtors have also consolidated domestic manufacturing operations from two facilities to one, and have closed three of their six distribution centers. The Debtors have also implemented several moves designed to increase efficiency in inventory, supply and international operations.

7. Despite these efforts, it has recently become clear that the Debtors do not have sufficient liquidity to survive the current economic downturn in their current state. As a result, the Debtors engaged Mesirow Financial, Inc. ("**Mesirow**") on March 9, 2009 to serve as investment bankers for the Debtors to assist the Debtors in exploring possible sale transactions. Mesirow contacted over 100 financial and strategic parties, and after an intense, expedited

marketing period the Debtors determined that the highest and best offer presently available to the Debtors was an offer from Wynnchurch Capital, Ltd. ("**Wynnchurch**") to serve as a stalking horse bidder in a sale of substantially all of the Debtors' assets under Section 363 of the Bankruptcy Code.

8. On April 10, 2009, the Debtors executed a Letter of Intent (the "**LOI**") with Wynnchurch representing Wynnchurch's stalking horse bid for substantially all of the Debtors' assets. Thereafter, on May 7, 2009, the Debtors entered into a binding asset purchase agreement (the "**APA**") with Wynnchurch and Wynnchurch's affiliate, Senco Holdings, Inc. for the purchase of substantially all of the Debtors' assets for $41 million in cash, plus the assumption of certain liabilities. The APA requires the Debtors, among other things, to commence these Chapter 11 Cases by May 11, 2009, obtain by May 28, 2009 an order from this Court approving bidding procedures for the sale of the Debtors' assets, and to obtain an order from this Court by July 7, 2009 approving the sale of substantially all of the Debtors' assets to Wynnchurch (or its affiliates) or such other successful bidder as may be selected at the auction in accordance with the bidding procedures. The Debtors are proceeding with a proposed sale process on those timelines.

9. Subject to the approval of this Court, the Debtors have obtained a proposed debtor-in-possession financing facility (the "**DIP Facility**") from the Debtors' prepetition secured lenders, led by Bank of America, NA, as administrative agent (the "**DIP Agent**") and as a lender, which the Debtors believe will provide the Debtors with sufficient liquidity through the above-described sale process.

**RELIEF REQUESTED**

10. By this Application, the Debtors desire and seek authority to retain and employ MA&A as their financial advisors in these Chapter 11 Cases, effective as of the Petition Date,

4

pursuant to section 327(a) of the Bankruptcy Code. The Debtors have selected MA&A because, among other things: (a) MA&A and its professionals that have been assigned to these Chapter 11 Cases have considerable experience in providing financial advisory services of the type proposed hereunder; (b) MA&A does not hold or represent any interest adverse to the Debtors or to their bankruptcy estates, as more particularly discussed below; and (c) MA&A is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as discussed in more detail below.

### Services to be Provided

11.     The Debtors require MA&A to render financial advisory services to the Debtors in these Chapter 11 Cases, including, without limitation, to[3]:

    a)    Assist the Debtors in the accumulation of information associated with a chapter 11 filing;

    b)    Assist the Debtors in the preparation of and provide recommendations regarding cash management, cash planning and borrowing base reporting associated with a chapter 11 filing;

    c)    Assist the Debtors in revising, updating and/or developing one or more 13 week cash flow projections including a projection(s) of the borrowing base or collateral base;

    d)    Assist the Debtors by working with executive management in the bankruptcy and sale process;

    e)    Assist the Debtors in the sale of the business as a going concern within the context of a Chapter 11 filing;

    f)    Assist the Debtors in the development and implementation of cost reduction, liquidity improvement, asset sale and collateral safeguarding programs;

    g)    Assist the Debtors in the development of appropriate management and employee programs to assist with restructuring plan and business operations;

---

[3]  This is only a summary of the services to be provided by MA&A pursuant to the Engagement Letter. The Engagement Letter governs the scope of services to be performed.

5

h) Assist the Debtors in investigating purchase order financing;

i) Assist the Debtors in connection with the identification, development and implementation of restructuring alternatives through introductions to private equity and hedge fund investors;

j) Attend and participate in court hearings and meetings on matters within the scope of the services to be performed and as mutually agreed upon; and

k) Provide such other services as may be agreed to by MA&A and the Debtors.

12. The Debtors seek to retain MA&A because of MA&A' extensive experience and knowledge in the field of financial advisory and consulting services  In addition, MA&A possesses extensive experience and knowledge providing financial advisory and consulting services in cases before bankruptcy courts.

13. For approximately five (5) weeks prior to the Petition Date, MA&A has provided financial advisory services in preparation for the commencement of these Chapter 11 Cases. MA&A is familiar with the Debtors' businesses and affairs and many of the potential issues that may arise in the context of these Chapter 11 Cases. Accordingly, the Debtors believe that MA&A both is well-qualified and uniquely able to service them in these Chapter 11 Cases in an efficient and timely manner.

14. MA&A has informed the Debtors that it will work to avoid duplication of efforts with respect to Mesirow Fnancial, Inc. ("**Mesirow**"), whom the Debtors are contemporaneously seeking to retain as investment banking and financial advisors, or any other financial advisors or similar professionals of the Debtors retained in these cases. While the Debtors seek to retain both MA&A and Mesirow as financial advisors, they are being retained to provide entirely different types of services. The financial advisory services provided by MA&A will concern analysis of the Debtors' revenues and operations and assistance with restructuring alternatives in

6

the chapter 11 context. In comparison, Mesirow is being retained to provide general investment banking advisory services, including interaction with the Debtors' stakeholders, private equity investors and mergers and acquisitions assistance. Given the differences in the types of services to be provided by MA&A and Mesirow, it should be relatively easy for MA&A and Mesirow to avoid duplication of efforts, and MA&A will endeavor to coordinate efficiently with the Debtors and with Mesirow and any other financial advisors retained by the Debtors that are involved significantly in these cases to avoid duplication and inefficiency.

### Terms of Retention

15. MA&A intends to apply for compensation for professional services rendered in connection with these Chapter 11 Cases, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Civil Practice and Procedure of the United States District Court for the Southern District of Ohio (the "**Local District Rules**"), the Local Bankruptcy Rules, Forms and Procedure for the United States Bankruptcy Court for the Southern District of Ohio (the "**Local Rules**"), and any of this Court's applicable orders, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges that MA&A incurs. The hourly rates and corresponding rate structure utilized by MA&A in these Chapter 11 Cases are similar to the hourly rates and corresponding rate structure used by MA&A for similar comparable complex matters, whether in court or otherwise, regardless of whether a fee application is required.

16. MA&A's hourly rates are set at a level designed to fairly compensate MA&A for the work of its professional and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates

charged elsewhere. In particular, MA&A hourly rates for matters related to these Chapter 11 Cases range as follows:

| Billing Category | Range |
|---|---|
| David Mack | $425 per hour |
| Joel Dryer | $400 per hour |
| Principals & Managing Consultants | $300 to $525 per hour |
| Senior Consultants/Specialists | $200 to $300 per hour |
| Support Staff | $25 to $75 per hour |

17. The following professionals are presently expected to have primary responsibility for providing services to the Debtors: David E. Mack and Joel Dryer.

18. To date, MA&A has received the amounts set forth in the Mack Affidavit from the Debtors as a retainer for professional services performed and expenses incurred prior to the Petition Date.

19. As of the Petition Date, the Debtors do not owe MA&A any amounts for services rendered before the Petition Date.

20. The Engagement Letter with MA&A also includes the following limitation of liability and indemnification provisions:

> Limitation of Liability.
> MA&A assumes no responsibility or liability under this Agreement other than to render the services called for hereunder in good faith, and shall not be responsible for any action taken by Client in following or declining to follow any advice or recommendations of MA&A. MA&A shall only be liable to Client by reason of acts by MA&A constituting gross negligence, and willful or wanton misconduct. MA&A makes no express or implied representations and/or warranties (including any warranties as to merchantability or fitness) of any kind. MA&A shall not be liable for any loss or damages resulting from its performance or failure to perform or resulting from Clients' reliance on counsel given. MA&A shall not be liable for any consequential or special damages arising out of the performance of the work or the failure to perform the work or services or for counsel given.

Insurance Indemnification.

(a)    During the term of MA&A's retention by the Client during the term of this Agreement, the Client shall maintain in full force and effect directors' and officers' liability and commercial liability insurance in commercially reasonable amounts with responsible, licensed insurance carriers which insures MA&A and each of its employees, representatives, contractors and agents acting in the capacity of Executive Officer, Chief Operating Officer, director, employee, representative, agent or other officer of the Client (whether in name or in fact) against all such liabilities ordinarily covered under such directors' and officers' and commercial liability coverage.

(b)    Client shall indemnify and hold harmless MA&A and such of its employees, representatives, contractors and agents acting in the capacity of Executive Officer, Chief Operating Officer, director, Chief Restructuring Manager, employee, representative, agent, or other officer of the Client (whether in name or in fact) for and against any loss, cost or damage sustained or incurred by such indemnified parties on account of their respective actual or alleged acts or omissions as though they formally held such offices, directorships and/or positions with the Client to the full extent authorized by the Business Corporation Act of Illinois and the Client's By-Laws; provided, however, that the foregoing indemnification shall be deemed null and void and of no effect on the parties in the event that (and to the extent that) such indemnification limits, terminates, novates or makes void all or any portions of the insurance coverage maintained and to be maintained by the Client pursuant to subparagraph (a) above.

The Debtors believe that such terms and conditions are reasonable and appropriate in the context of their retention of MA&A, and therefore request that the retention of MA&A be approved including these provisions. Unlike the market for other professionals that the Debtors may retain, indemnification is a standard consideration in the market for financial advisors. MA&A and the Debtors believe that these terms and conditions are comparable to those generally obtained by financial advisory firms of similar stature to MA&A and for comparable engagements, both in and out of court. See, e.g., In re Milacron Inc., Case No. 09-111235 (Bankr. S.D. Ohio, April 6, 2009); In re United Artists Theatre Company, 315 F.3d 217 (3d Cir. 2003); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000).

9

21. Pursuant to the recent revisions to Bankruptcy Rule 6003, the Court may authorize payment of a prepetition claim within 20 days after the Petition Date if such relief is necessary to avoid immediate and irreparable harm. As explained above, retaining MA&A is essential to the continued, uninterrupted operation of the Debtors' businesses. The Debtors rely on MA&A's extensive experience and knowledge in the field of financial advisory and consulting services  In addition, the Debtors rely on MA&A's extensive experience and knowledge providing financial advisory and consulting services in cases before bankruptcy courts.

### MA&A's Disinterestedness

22. To the best of the Debtors' knowledge, and except as disclosed in the Mack Affidavit, MA&A does not hold or represent any interest adverse to the Debtors' estate. MA&A is a "disinterested person," as that phrase is defined in Section 101(14) of the Bankruptcy Code as modified by Section 1107(b) of the Bankruptcy Code, and MA&A's employment is necessary and in the best interests of the Debtors and the Debtors' estates. Furthermore, the proposed employment is not prohibited by, or improper under, Bankruptcy Rule 5002.

### NOTICE

23. No trustee, examiner or creditors' committee has been appointed in these Chapter 11 Cases. The Debtors have provided notice of this Application to: (i) the Office of the United States Trustee for the Southern District of Ohio; (ii) counsel to the administrative agent for the Debtors' prepetition lenders; (iii) counsel to the administrative agent for the Debtors' proposed debtor-in-possession lenders; (iv) counsel to Wynnchurch; (v) the creditors listed on the Debtors' consolidated list of thirty largest unsecured creditors, as filed with the chapter 11 petitions; (vi) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; and (vii) any governmental unit listed in LBR 5003-1(d). In light of the nature of

the relief requested, the Debtors submit that no further notice is required or needed under the circumstances. Please take notice that the Debtors have filed a Motion for an Expedited Hearing to consider First Day Motions and Applications, including the foregoing. The Debtors shall serve notice of the objection deadline and expedited hearing date pursuant to further order(s) of this Court.

## **NO PRIOR REQUEST**

24. No prior application for the relief requested herein has been made to this Court or any other court.

## **WAIVER OF MEMORANDUM OF LAW**

25. This Application includes citations to the applicable authorities and a discussion of their application to this Application. Accordingly, the Debtors respectfully submit that such citations and discussion satisfy the requirement that the Debtors submit a separate memorandum of law in support of this Application pursuant to LBR 9013-1(a).

WHEREFORE, the Debtors respectfully request that this Court (a) enter the Interim Order, substantially in the form attached hereto as Exhibit A, (i) authorizing the Debtors to employ and retain MA&A as financial advisor to the Debtors and Debtors-in-Possession on an interim basis, effective as of the Petition Date and (ii) granting such other and further relief as this Court deems appropriate, (b) schedule the Final Hearing to consider entry of the Final Order and (c) after consideration at the Final Hearing, enter the Final Order, substantially in the form attached hereto as Exhibit B, (i) authorizing the Debtors to employ and retain MA&A as financial advisor to the Debtors and Debtors-in-Possession on a final basis, effective as of the Petition Date and (ii) granting such other and further relief as this Court deems appropriate.

Dated: May 8, 2009
Cincinnati, Ohio

SENCORP, ON BEHALF OF ITSELF AND
ALL OF THE OTHER DEBTORS LISTED
ON <u>SCHEDULE 1</u> HERETO

                                         /s/ David T. Fyffe
                                         David T. Fyffe
                                         Vice President – Corporate Financial Operations
                                         and Treasurer of SENCORP

## Schedule 1

Senco Products, Inc.
Senco Export, Inc.
SenSource Global Sourcing, LLC
TyRex, LLC
Global Fastening Solutions, LLC
Agrifast, LLC
Nexicor, LLC
Omnifast, LLC
S C FINANCIAL, INC.
Senco International, Inc.
Sentron Medical, Inc.
Gregg Laboratories, Inc.