**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: July 02, 2009**

J. Vincent Aug, Jr.
United States Bankruptcy Judge

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 09-12869 (JVA) |
| | ) | |
| SENCORP, et al.,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |

**ORDER (A) APPROVING THE SALE OF DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] dated May 8, 2009 of the above-captioned debtors and debtors-in-possession (the "Debtors"), _inter alia_ for entry of an order (the

---

[1]    The Debtors in these Chapter 11 cases are:  SENCORP, Senco Products, Inc., Senco Export, Inc., SenSource Global Sourcing, LLC, TyRex, LLC, Global Fastening Solutions, LLC, Agrifast, LLC, Nexicor, LLC, Omnifast, LLC, S C FINANCIAL, INC., Senco International, Inc., Sentron Medical, Inc., and Gregg Laboratories, Inc.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreement (hereinafter defined), as applicable.

"Order") (A) approving the sale (the "Sale") of certain of the Debtors' assets free and clear of all liens, Claims, Liability, Encumbrances and interests (the "Interests and Encumbrances"), except to the extent set forth in the Asset Purchase Agreement (hereinafter defined), pursuant to Sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy procedure (the "Bankruptcy Rules"); (B) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "Assigned Agreements") identified by the Debtors and more fully described in that certain Asset Purchase Agreement dated May 7, 2009 (the "Asset Purchase Agreement") by and between the Debtors[3] and Senco Holdings, Inc. or its designee Senco Brands, Inc. (the "Buyer") for the purchase of the Assets;[4] and (C) granting certain related relief, and the Debtors having determined that the highest and otherwise best offer for the Sale of the Assets submitted at the Auction was made by the Buyer in the form of the Asset Purchase Agreement; and the Court having held a hearing on July 2, 2009 (the "Sale Hearing") to approve the Asset Purchase Agreement; and the Court having reviewed and considered (i) the Motion, (ii) the objections thereto, if any, (iii) the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing and these Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefor, it is hereby

---

[3]     Specifically, the Asset Purchase Agreement is between SENCORP, Senco Products, Inc., Global Fastening Solutions, LLC, Nexicor, LLC, Omnifast, LLC, SC Financial, Inc., Senco International Inc., Sentron Medical, Inc., Agrifast LLC, Senco Export, Inc., Sensource Global Sourcing, LLC, Gregg Laboratories, Inc. (collectively, "Sellers"), and Senco Holdings, Inc. or its designee (the "Buyer").

[4]     The "Assets" consist of substantially all of the assets of the Debtors (as defined in the Asset Purchase Agreement).

**FOUND AND DETERMINED THAT:**[5]

A.     **Jurisdiction and Venue**.  The court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(B)(2)(a).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, and Fed. R. Bankr. P. 2002, 6004 and 6006.

C.     **Petition Date**.   On May 8, 2009 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, as amended.

D.     **Entry of Bidding Procedures Order**.   On May 27, 2009 this Court entered an order (the "Bidding Procedures Order") (A) establishing bidding and auction procedures (the "Bidding Procedures"); (B) approving proposed bid protections (the "Break-Up Fee and Expense Reimbursement") to Buyer in accordance with the Asset Purchase Agreement; (C) scheduling an auction (the "Auction") and sale hearing (the "Sale Hearing") for the Sale of the Debtors' Assets; (D) permitting credit bidding pursuant to Bankruptcy Code section 363(k) under certain circumstances; (E) establishing procedures for noticing and determining cure amounts (the "Cure Amounts"); (F) approving the form and matter of notice of all procedures, protections, schedules and agreements; and (G) granting certain related relief.

---

[5]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

E.     **Compliance with Bidding Procedures Order**.   As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order and the Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.  The Debtors and their professionals have actively marketed the Assets, both prior to and after the Petition Date, and conducted the sale process in compliance with the Bidding Procedures Order, and have afforded potential purchasers a full and fair opportunity to make higher and better offers.

F.     **Notice**.  As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment procedures for the Assigned Agreements (including the objection deadline with respect to any Cure Amount) and the assumption and assignment of the Assigned Agreements and the Cure Amounts has been provided in accordance with sections 102(l), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and in compliance with the Bidding Procedures Order, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assigned Agreements or the Cure Amounts is or shall be required.

G.     **Corporate Authority**.   Each of the Debtors (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Assets by the Debtors has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and

authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtors to consummate such transactions.

H.    **Opportunity to Object**.  A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including; (i) the Office of the United States Trustee; (ii) counsel for the Buyer; (iii) counsel for the Creditors' Committee; (iv) all entities known to have expressed an interest in a transaction with respect to the Assets during the past two months; (v) all creditors of the Debtors and entities known to have asserted any Interests or Encumbrances in or upon the Assets; (vi) all federal, state, county and local and foreign regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (vii) all parties to Assigned Agreements; (viii) the United States Attorney's office; (ix) the Securities and Exchange Commission; (x) the Internal Revenue Service; (xi) the Pension Benefit Guaranty Corporation; (xii) the Office of the United States Trustee; (xiii) all entities filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in these Chapter 11 Cases; and (xiv) a Notice of the Sale and Auction was published in the *Cincinnati Enquirer* and the *Wall Street Journal*.

I.    **Sale in Best Interest**.  Consummation of the Sale of the Assets at this time is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

J.    **Business Justification**.  Sound business reasons exist for the Sale.  Entry into the Asset Purchase Agreement constitutes each of the Debtors' exercise of sound business judgment

and such acts are in the best interests of each of the Debtor, its estate, and all parties in interest. The Court finds that each Debtor has articulated good and sufficient business reasons justifying the Sale.  Such business reasons include, but are not limited to, the following:  (i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Assets on a going concern basis and avoid decline and devaluation of the Assets; and (iii) any plan would not have likely yielded as favorable an economic result.

K.     **Arm's-Length Sale**.  The Asset Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

L.     **Good Faith Purchaser**.  The Buyer is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law.  The Buyer will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

M.     **Consideration**.  The consideration provided by the Buyer for the Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

N.     **Free and Clear**.  The Debtors may sell the Assets (which do not include any assets owned by any non-debtor entities) free and clear of all Interests and Encumbrances (other than Permitted Encumbrances) because, with respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied.  Those holders of Interests and Encumbrances who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests and Encumbrances who did object fall within one or more of the other subsections of section 363(f) Bankruptcy Code.

O.     **Bank of America Pay-Off Amount**.  The lenders under the Bank of America Credit Facility are secured creditors of the Debtors, holding valid liens, claims, interests and encumbrances in, on and against the Debtors' Cash Collateral and the Lender's Prepetition Collateral (as defined in the DIP Financing Order), arising in connection with the Bank of America Credit Facility and that certain Final Order (I) Authorizing Debtors-in-Possession to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364; (II) Granting Liens, Security Interests and Superpriority Claims; and (III) Authorizing Use of Cash Collateral and Granting Adequate Protection (as amended by further order of the Court, the "DIP Financing Order") and under which Bank of America holds an allowed secured claim, not subject to subordination and otherwise unavoidable for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, against the Debtors for principal, accrued interest and reimbursable fees and expenses as of the date of the entry of this Order in an approximate amount of $24,093,701.82, plus interest, fees and reasonable expenses accrued after the date of this Order and while the obligations under the Bank of America Credit Facility remain outstanding (collectively, the "Bank of America Payoff Amount"), subject to the rights of the

Committee or other party in interest, preserved in paragraphs 19 and 22 of the DIP Financing Order, to file an adversary proceeding challenging the amount, validity, enforceability, perfection, or priority of the Prepetition Indebtedness or the Prepetition Agent's Liens on the Prepetition Collateral in respect thereof or otherwise assert any claims or causes of action against the Prepetition Agent or Prepetition Lenders on behalf of the Debtors' estates no later than 60 days from the Petition Date, referred to in the DIP Financing Order as the Investigation Period, and to review and object to the costs, fees (including attorneys' fees), charges and expenses of the Prepetition Agent and the DIP Agent.

P.  **Assumption of Executory Contracts and Unexpired Leases**.  The (i) transfer of the Assets to the Buyer and (ii) assignment to the Buyer of the Assigned Agreements, will not subject the Buyer to any liability whatsoever prior to the Closing Date (defined below) or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust, successor or transferee liability.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Agreements to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Agreements is the best interests of the Debtors, their estates, and their creditors.  The Assigned Agreements being assigned to the Buyer are an integral part of the Assets being purchased by the Buyer and, accordingly, such assumption and assignment of Assigned Agreements is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

Q. **Cure/Adequate Assurance**. The Debtors or the Buyer, as applicable and in accordance with the Asset Purchase Agreement, have (i) cured, or have provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assigned Agreements, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Agreements within the meaning of 11 U.S.C. § 365(b)(1)(B). The Buyer has provided adequate assurance of future performance of and under the Assigned Agreements within the meaning of 11 U.S.C. § 365(b)(1)(C).

R. **Prompt Consummation**. The Sale of the Assets must be approved and consummated promptly in order to preserve the value of the Assets. Therefore, time is of the essence in consummating the Sale, and the Debtors and the Buyer intend to close the Sale as soon as possible.

S. **No Intentional Fraudulent Transfer**. The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

T. **Buyer Not an Insider and No Successor Liability**. Immediately prior to the Closing Date, Buyer was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between Buyer and the Debtors. Pursuant to the Asset Purchase Agreement, Buyer is not purchasing all of the Debtors' assets in that Buyer is not purchasing any of the Excluded Assets, and Buyer is not holding itself out to the public as a continuation of the Debtors. The Sale does

not amount to a consolidation, merger or de facto merger of Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between Buyer and the Debtors, there is no continuity of enterprise between the Debtors and Buyer, Buyer is not a mere continuation of the Debtors or the Debtors' estates, and Buyer does not constitute a successor to the Debtors or the Debtors' estates.

U.  **Legal, Valid Transfer**.  The transfer of the Assets to Buyer will be a legal, valid, and effective transfer of the Assets, and will vest Buyer with all right, title, and interest of the Debtors to the Assets free and clear of all Interests and Encumbrances, except as set forth in the Asset Purchase Agreement.

V.  **Asset Purchase Agreement Not Modified**.  The terms of the Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects and the terms of the Order shall not modify the terms of the Asset Purchase Agreement, provided, however, that the Committee shall have the right to be consulted, and to monitor and object to implementation of the Asset Purchase Agreement as stated below.

W.  **Not a Sub Rosa Plan**.  The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

It is therefore **ORDERED, ADJUDGED, AND DECREED EFFECTIVE IMMEDIATELY THAT:**

**General Provisions**

1.  The Motion is GRANTED and APPROVED in all respects.

2.  All objections to the Motion (including, without limitation, the objections of the Official Committee of the Unsecured Creditors and the Pension Benefit Guaranty

Corporation) or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**<u>Approval of the Sale of the Assets</u>**

3.      The Asset Purchase Agreement, substantially in the form attached hereto as <u>Exhibit A</u>, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved in all respects.

4.      Pursuant to 11 U.S.C. § 363(b), the Sale of the Assets to Senco Brands, Inc., the Buyer, free and clear of all Interests and Encumbrances (except those specifically permitted by the Asset Purchase Agreement), and the transactions contemplated thereby are approved in all respects.

5.      Except as otherwise specifically provided in the Asset Purchase Agreement, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, (including without limitation any products liability Claims with respect to any Inventory or other assets sold, shipped or delivered prior to the Closing Date) whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or their Business or any obligations of or Claims against the Debtors arising at any time, except for the Assumed Liabilities, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Assets prior to the Closing Date.

6.      The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale shall not affect the validity of the Sale to the Buyer.

The Buyer is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

7.     As a good faith purchaser of the Assets, the Buyer has not entered into an agreement with any other potential bidders at the Sale, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Assets, and therefore neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

**Sale and Transfer of Assets**

8.     Pursuant to 11 U.S.C. § 363(b), the Debtors are hereby authorized to sell the Assets to Buyer and consummate the Sale in accordance with and subject to the terms and conditions of the Asset Purchase Agreement, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Asset Purchase Agreement, and are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including without limitation the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by Buyer for the purposes of assigning, transferring, granting, conveying and conferring to Buyer or reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement.

9.     Pursuant to 11 U.S.C. § 363 (b) and 363(f), the Assets shall be transferred to the Buyer upon consummation of the Asset Purchase Agreement (the "<u>Closing Date</u>") free and

clear of all Interests and Encumbrances (except the Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever including, but not limited to, Interests or Encumbrances in respect of the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (4) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (7) any theories of successor or products liability; and (8) any Environmental Health and Safety Laws (as defined in the Asset Purchase Agreement). Nothing in this order shall be construed to: (1) release, nullify, or enjoin a Governmental Authority from enforcing any Environmental Health and Safety Laws under which a purchaser of property would otherwise be liable as a current owner or operator after the date of purchase, or (2) permit, in any circumstances, a Governmental Authority to obtain from the Prevailing Bidder penalties arising

under Environmental Health and Safety Laws prior to the Closing Date. For purposes of clarification, any employee medical claims which are incurred prior to the Closing (regardless of when such claims are presented for payment) shall be claims against the bankruptcy estates of the Debtors, and not the Buyer, and the Buyer shall be responsible only for such claims which are incurred after the Closing. All such Interests and Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances) shall attach (effective upon the transfer of the Assets to the Buyer) to the proceeds of the Sale (the "Proceeds") with the same force, validity, priority and effect, if any, as the claims, liens, encumbrances, and interests formerly had against the Assets, if any, subject to the Debtors' ability to challenge the extent, validity, priority and effect of the Interests and subject to and as otherwise provided in any other order of this Court in these Chapter 11 Cases.

10.     On the Closing Date, this Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in such Assets to the Buyer. On the Closing Date, and subject to section 365 of the Bankruptcy Code, this Order also shall be construed and constitute for any and all purposes a complete and general assignment of all right, title and interest of the Debtors and each bankruptcy estate to the Buyer in Assigned Agreements.

11.     All entities who are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Buyer on the Closing Date.

12.     Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade, products liability

and other creditors, holding Interests or Encumbrances of any kind or nature whatsoever against or in the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated now existing or hereinafter arising), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, or the transfer of the Assets to the Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successor or assign, its property, or the Assets, such persons' or entities' Interest or Encumbrances.

13.     On the Closing Date of the Sale, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests and Encumbrances in the Assets, if any, as such Interests and Encumbrances may have been recorded or otherwise exist.

14.     Subject to the terms and conditions of this Order and the Asset Purchase Agreement, the transfer of the Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Buyer with all right, title, and interest of the Debtors in and to the Assets free and clear of all Interests and Encumbrances of any kind or nature whatsoever.

**Assumption and Assignment of Assumed and Assigned Agreements**

15.     Pursuant to 11 U.S.C. § 105(a) and 365, and subject to and conditioned upon the closing of the Sale, the Debtors' assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the Asset Purchase Agreement, of the Assigned Agreements is hereby approved, and the requirements of 11 U.S.C. § 365(b)(1) with respect thereto are hereby deemed satisfied.

16.     The Debtors are hereby authorized and directed in accordance with 11 U.S.C. § 105(a), 363 and 365 to (a) assume and assign to the Buyer, effective upon the

Closing Date of the Sale, the Assigned Agreements free and clear of all Interests and Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances) and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Agreements to the Buyer.

17.     The Assigned Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Agreements (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Debtors shall be relieved from any further liability with respect to the Assigned Agreements after such assignment to and assumption by the Buyer, except as provided in the Asset Purchase Agreement.

18.     All defaults or other obligations of the Debtors under the Assigned Agreements arising or accruing prior to the Petition Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured upon payment, to be made upon the Closing Date of the Sale, of the Cure Amounts specified in Exhibit A attached hereto.  All defaults or other obligations of the Debtors under the Assigned Agreements arising or accruing on or after the Petition Date to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Debtors at the Closing Date.  Except as set forth in the Asset Purchase Agreement with respect to the Assumed Cure Costs, the Buyer shall have no liability or obligation to cure Assigned Contract defaults accruing prior to the Closing Date.  Notwithstanding any language in this paragraph to

the contrary, the Debtors shall be responsible for all taxes and tax payments to the extent provided in the Asset Purchase Agreement.

19. Notwithstanding anything herein to the contrary, the objections to the noticed Cure Amounts filed on June 22, 2009 by Oracle USA, Inc., and Simes Senco, S.A., respectively, shall be heard by the Court at the Omnibus Hearing on July 15, 2009. The Debtors and the Buyer have represented that they are in the process of negotiating the appropriate Cure Amounts with these contract counterparties, and anticipate resolving any outstanding issues prior to the July 15, 2009 Omnibus Hearing.

20. Notwithstanding anything herein to the contrary, the Limited Objection of Poppers Holding B.V. and Verpa-Senco B.V. to Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases (the "Poppers Objection") shall be heard by the Court at the Omnibus Hearing on July 15, 2009. The Debtors and the Buyer are in the process of negotiating a resolution with respect to the Sale Contract (as defined in the Poppers Objection) and anticipate resolving any outstanding issues prior to the July 15, 2009 Omnibus Hearing.

21. Notwithstanding the fact that the list of Assigned Agreements in Exhibit A attached hereto includes: (a) Shareholders Agreement with Micronics and its Shareholders; (b) Investor Rights Agreement with Micronics and its Shareholders; (c) Stockholders Agreement with Argos Therapeutics; and (d) Amended and Restated Shareholders Agreement with Medennium, Inc., none of the foregoing "Assigned Agreements" shall be assumed and assigned by the Debtors to the Buyer pursuant to this Order, but may be assumed and assigned by the Debtors to the Buyer in the future by separate order of the Court.

22. The Buyer shall have the right, in its sole discretion, to add or delete any additional executory contract as an Assigned Contract at any time prior to Closing as provided in

section 2.1 of the Asset Purchase Agreement, provided, however, any Cure Amounts resulting from such additional Assigned Agreements shall constitute Assumed Liabilities payable by the Buyer and not payable by the Debtors. In the event that Buyer elects to add any executory contract as an Assigned Contract, Buyer shall submit to the Court prior to Closing an order in form and substance satisfactory to the Debtors, the Buyer and the non-Debtor party to such Assigned Contract(s) setting forth such Assigned Contract(s) and the corresponding Cure Amounts therefore. In the event that the parties to the additional Assigned Agreements are unable to agree upon the appropriate Cure Amounts for the additional Assigned Contract(s), the Debtors and the Buyer reserve the right to seek a hearing before this Court to determine the appropriate Cure Amounts.

23.    Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, the rights and obligations of the Debtors, the Buyer, Poppers Holding B.V. and Verpa-Senco, B.V. pursuant to Section 365(n) of the Bankruptcy Code, if any, shall be and hereby are fully reserved, preserved and protected.

24.    Each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Buyer, or the property of either of them, any default existing as of the date of the Closing Date of the Sale.

**Additional Provisions**

25.    The consideration provided by the Buyer for the Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

26.     Subject to the terms of the Asset Purchase Agreement, which is hereby approved, in all respects by this Order, and subject to the rights of the Committee or other party in interest, preserved in paragraphs 19 and 22 of the DIP Financing Order, to file an adversary proceeding challenging the amount, validity, enforceability, perfection, or priority of the Prepetition Indebtedness or the Prepetition Agent's Liens on the Prepetition Collateral in respect thereof or otherwise assert any claims or causes of action against the Prepetition Agent or Prepetition Lenders on behalf of the Debtors' estates no later than 60 days from the Petition Date, referred to in the DIP Financing Order as the Investigation Period, and to review and object to the costs, fees (including attorneys' fees), charges and expenses of the Prepetition Agent and the DIP Agent, the Debtors are authorized and directed to pay or cause to be paid the Bank of America Payoff Amount by wire transfer of immediately available funds to an account designated by Bank of America in full satisfaction of debt arising under the Bank of America Credit Facility and DIP Financing Order; however, as preserved in the DIP Financing Order, the payment of the Bank of America Payoff Amount shall not effect a release or in any way impact any timely adversary proceeding, claims, causes of action or objections under paragraphs 19 and 22 of the DIP Financing Order asserted by the Committee or other parties in interest.  Unless the Investigation Period (as defined in the DIP Financing Order) has expired prior to the Closing Date without a claim being asserted against the Prepetition Agent or the Prepetition Lenders (as those terms are defined in the DIP Financing Order), the Debtors shall remit on the Closing Date the additional sum of $250,000 (the "Holdback") to DIP Agent to be applied to cover any fees, costs, and expenses incurred by the Prepetition Agent and the Prepetition Lenders associated with any extension of the Investigation Period or any claim lodged prior the expiry of the Investigation Period.  The notice provisions of paragraph 22 of the DIP Financing Order shall

apply to the application of the Holdback to any fees, costs, and expenses. Upon the earlier of (a) the expiration of the Investigation Period; or (b) the final resolution of any claims or objections brought against the Prepetition Agent, Prepetition Lender, DIP Agent or DIP Lender, Prepetition Agent shall apply the Holdback to payment of the reasonable fees, costs, and expenses and remit the balance with all accrued interest, if any, to the Debtors. Nothing in this Order precludes any party-in-interest from objecting to the application of the Holdback or impairs the ongoing senior secured and superpriority claims of the Prepetition Agent and the DIP Agent in and to the Proceeds or any other assets of the Debtors, as provided for in the DIP Financing Order or precludes the DIP Agent or the Prepetition Agent from seeking additional sums for fees and costs incurred in excess of the Holdback.

27. Notwithstanding anything herein to the contrary, there is no time limitation for the Debtors, the Committee and other parties in interest to challenge and object to the liens and claims of George Juilfs as scheduled by SENCORP and Debtors shall not distribute, pay or otherwise transfer anything of value to George Juilfs or other secured creditors, other than the Prepetition Agent and the DIP Agent and except as paid for Cure Costs, in connection with the Closing, and shall not do so thereafter other than in accordance with a confirmed plan of reorganization or liquidation, or in accordance with any other final, nonappealable order entered by the Court.

28. This Order (a) shall be effective as a determination that, on the Closing Date, all Interests and Encumbrances of any kind or nature whatsoever existing as to the Debtors or the Assets prior to the Closing Date (other than Permitted Encumbrances) have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities,

including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. The Buyer and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph. All Interests and Encumbrances of record as of the date of this Order shall be forthwith removed and stricken as against the Assets. All entities described in this paragraph are authorized and specifically directed to strike all such recorded liens, claims, rights, interests and encumbrances against the Assets from their records, official and otherwise.

29.     If any person or entity that has filed statements or other documents or agreements evidencing claims, liens, Encumbrances, or Interests in any of the Assets does not deliver to the Debtors or the Buyer prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the Assets, the Debtors and/or the Buyer are hereby authorized to execute and file such

statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the Assets.

30.     As specifically provided in the Asset Purchase Agreement, the Debtors will cooperate with the Buyer and the Buyer will cooperate with the Debtors, in a commercially reasonable manner, in each case to ensure that the transaction contemplated in the Asset Purchase Agreement is consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the Asset Purchase Agreement (including, without limitation, adding such specific assets, to such documents, as may be reasonably requested by the Buyer pursuant to the terms of the Asset Purchase Agreement).

31.     The Buyer shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Assets other than for the Assumed Liabilities and the Assigned Agreements to the extent provided under the Asset Purchase Agreement.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Asset Purchase Agreement, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor liabilities (including without limitation product liability with respect to any Inventory or other assets sold, shipped or delivered prior to the Closing Date) of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date.

32.     Except for Assumed Liabilities and Assigned Agreements as set forth in Asset Purchase Agreement, under no circumstances shall the Buyer be deemed a successor of or to the Debtors for any Interest or Encumbrances against or in the Debtors or the Assets of any kind or nature whatsoever.   Except as set forth in the Asset Purchase Agreement, the sale, transfer, assignment and delivery of the Assets and the Assigned Agreements shall not be subject to any Interest or Encumbrances, and Interests and Encumbrances of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors.   All persons holding Interests or Encumbrances against or in the Debtors or the Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever against the Buyer, its officers, directors, shareholders and professionals, its property, its successors and assigns, or the Assets with respect to any Interest or Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances) such person or entity had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Assets. Following the Closing Date, no holder of an Interest or Encumbrance in the Debtors shall interfere with the Buyer's title to or use and enjoyment of the Assets and the Assigned Agreements based on or related to such Interest, or any actions that the Debtors may take in their Chapter 11 Cases.

33.     This Court shall retain jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, except as otherwise provided therein, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Buyer free and clear of Interests and Encumbrances

(other than Permitted Encumbrances), or compel the performance of other obligations owed by the Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Buyer against (i) claims made related to any of the Excluded Liabilities (as defined in the Asset Purchase Agreement), (ii) any claims of successor or products liability related to the Assets or Assigned Agreements, or (iii) any claims of Interests and Encumbrances (other than Permitted Encumbrances) asserted in the Debtors or the Assets, of any kind or nature whatsoever.

34.    Notwithstanding anything herein to the contrary, the Debtors shall consult with the Committee and the Committee shall have the right and shall be afforded access in to monitor and object to any action by Debtors or Buyer in implementing the Asset Purchase Agreement, including, without limitation, any actions that the Committee believes may have an impact upon the proceeds to be received or retained by the Debtors and their estates under the Asset Purchase Agreement and upon the Debtors' and their estates' rights and interests in and under the terms of the Asset Purchase Agreement, including but not limited to matters relating to the Buyer Adjustment Amount and other Inventory and Accounts Receivable issues under Section 3.5 of the Asset Purchase Agreement, the Assumed Pre-Petition Critical Vendor Claims and Section 2.3 of the Asset Purchase Agreement, the Critical Vendor Claim Adjustment Amount, and the indemnification provisions under Article 12 of the Asset Purchase Agreement. Within a reasonable time prior to the Debtors taking or not taking any action required or allowed under the Asset Purchase Agreement, the Debtors shall consult with the Committee regarding such action.    Further, the Debtors shall consult with the Committee on any and all

communications from or with the Buyer on matters that may potentially have an impact upon the proceeds to be received or retained by the Debtors and their estates under the Asset Purchase Agreement and upon the Debtors' and their estates' rights and interests in and under the terms of the Asset Purchase Agreement. At any time, the Committee shall have the right to bring an objection before the Court for adjudication of the rights and responsibilities under, and/or interpretation of the terms and implementation of, the Asset Purchase Agreement and this Order, under the Court's retention of jurisdiction, on any issue, including but not limited to the level of consultation and information that it receives from the Debtors and Buyer, and, any dispute the Committee may have with respect to any action or inaction, position, decision or determination of either the Debtors or the Buyer under the Asset Purchase Agreement that may potentially have an impact upon the proceeds to be received or retained by the Debtors and their estates in connection with the Asset Purchase Agreement and the Debtors' and their estates' rights and interests in and under the terms of the Asset Purchase Agreement. Notwithstanding anything contrary herein, the Committee's rights set forth herein shall not amend or modify the Asset Purchase Agreement.

35.     The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors, the Buyer, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Assets to be sold to the Buyer pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

36. The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

37. The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

38. Nothing contained in any order entered in the Chapter 11 Cases subsequent to entry of this Order, nor in any chapter 11 plans confirmed in these Chapter 11 Cases, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

39. This Order shall be effective and enforceable immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h), 6006(d) and any other provision of the Bankruptcy Code or Bankruptcy Rules shall not apply.

40. The provisions of this Order are nonseverable and mutually dependent.

41. To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow Buyer to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow Buyer to take any and all actions permitted by the Asset Purchase Agreement.

42.     To the extent a counter party to an Assigned Contract failed to timely object to a Cure Amount (as defined in the Bidding Procedures and Bidding Procedures Order), such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Assigned Contract to which it relates.

43.     The Sale shall not be subject to any bulk sales laws.

44.     The Debtors and each other person having duties or responsibilities under the Asset Purchase Agreement or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement, to issue, execute, deliver, file and record, as appropriate, the Agreement, and any related agreements, and to take any action contemplated by the Asset Purchase Agreement or this Order, and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby.

**SO ORDERED.**

**###**

# Exhibit A
## Assigned Agreements

| Description | Cure Costs |
|---|---|
| Preferred Supplier Agreement w/ Sphere 1 | $0.00 |
| Sale & License Agreement w/ Miltex (assigned from Welch Allyn) | $0.00 |
| Distributorship Agreement w/ CID (for Canada) | $0.00 |
| Asset Sale to Impax (License Agreement) | $0.00 |
| Sales Agreement w/ Momentive Performance Materials | $4,013.78 |
| Supply Agreement w/ OMG | $0.00 |
| License Agreement w/ OMG | $0.00 |
| Sales Representative Agreement w/ Pro-Staff Sales | $0.00 |
| Supplier Agreement w/ Blue Linx | $0.00 |
| Program Agreement Letter (Rebate Program) w/ Lumberman's Merchandising | $0.00 |
| Contracts and Note Payable w/ ADP | $1,296.38 |
| Trademark Licensing Agreement with Amatei Trading Company (for Japan) | $0.00 |
| License Agreement w/ Amatei Trading Company | $0.00 |
| Agreement w/ Amazon Fulfillment Services | $0.00 |
| Sales Rep Agreement w/ Brian Conboy | $0.00 |
| Software License Agreement with Business Objects Americas (incl. Renewed Support Detail) | $0.00 |
| Lease w/ Calwest Industrial Holdings (for Tigard, OR DC) | $0.00 |
| Distributor Agreement w/ CID (for Canada) | $0.00 |
| Independent Contractor Agreement w/ Commercial Construction Mgmt & Resource Grou | $367.50 |
| Motor Transportation Contract w/ Central Freight Lines | $0.00 |
| Champion Loan Tool Agreement | $0.00 |
| Product Supply & Confidentiality Purchasing Agreement w/ Champion Homes Builders | $0.00 |
| Supply Agreement w/ CHEP USA | $0.00 |
| Consignment Agreement w/ CMH Manufacturing | $0.00 |
| Service Agreements (various) w/ Cincinnati Bell | $33,288.49 |
| Service Order & Storage Agreement w/ Cintas Document Mgmt | $5,408.79 |
| Equipment Lease Rental Agreement with Clarklift of California (RE # 65945) | $409.94 |
| Equipment Lease Rental Agreement with Clarklift of California (RE # 980450S) | $0.00 |
| Equipment Rep Lease Rental Agreement with Clarklift of California (RE # 980453S) | $0.00 |
| Sales Rep Agreement w/ Tim Akers (Coast Air Tool) | $0.00 |
| Basic Vendor Agreement w/ Costco Wholesale (US & Puerto Rico) (Incl. std. terms) | $0.00 |
| Water Management contract w/ Crown Solutions (OP 2) | $0.00 |
| Motor Transportation Contract w/ Roadrunner Dawes Transport | $4,056.04 |
| Sales Rep Agreement w/ Dean Pastore | $0.00 |
| License Agreement with Demand Management (software license) | $0.00 |
| Advertising Contract w/ Dixieline Lumber & Home Centers | $0.00 |
| Fleet Service Agreement w/ Emkay | $103,963.00 |
| Service Part Warehousing Agreement w/ EPAS Group (for Peotone, IL) | $29,333.00 |
| Motor Transportation Contract w/ FEDEX Freight East | $722.52 |
| Motor Transportation Contract w/ Fedex Freight Systems West | $193.00 |
| Motor Transportation Contract w/ Fedex National LTL | $8,903.69 |
| Motor Transportation Contract w/ FedEx Express | $3,240.91 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |

| Description | Cure Costs |
|---|---|
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Consignment Agreement w/ Fleetwood | $0.00 |
| Sales Rep Agreement w/ Stephen Berry (Freedom Fastening Systems) | $0.00 |
| Equipment Lease Agreement w/ General Electric Capital Corporation | $5,217.12 |
| Latin America Irrevocable Commercial Offer for the Purchase and Resale of Screws w/ Golden Hawk | $0.00 |
| Fuel Cell Supply Agreement w/ Hamex Corporation | $0.00 |
| Agreement with Home Depot | $0.00 |
| IDI Sales Agreement & Software License for payroll with IDI | $5,515.00 |
| Customer Ltr of Appt w/ Kentec | $0.00 |
| Renewal Agreement w/ Lowe's | $0.00 |
| Master Agreement w/ Lumbermens Merchandising | $0.00 |
| Loan Tool Investment w/ MasterBrand Cabinets | $0.00 |
| Agreement with Menards | $0.00 |
| Business Services Agreement w/ Microsoft  (Incl various forms) | $94,417.50 |
| Motor Transportation Contract w/ Milan Express | $9,995.94 |
| Motor Transportation Contract w/ New England Motor Freight | $0.00 |
| Distributor Agreement with Nylex (incl. Receivership Agreement. Amendment) (for Australia) | $0.00 |
| Motor Transportation Contract w/ Oak Harbor Freight Lines | $976.00 |
| License & Services Agreement w/ Oracle USA (incl. Payment Plan Agreement and Payment Schedule between SENCORP and Oracle Credit Corporation (as assigned to Bank of America Leasing & Capital, LLC)) | $28,232.04 |
| Motor Transportation Contract w/ Overnight Transportation (UPS Freight) | $0.00 |
| Software End User License & Services Agreement w/ Peoplesoft | $0.00 |
| Equipment Lease with Pitney Bowes (postage machine) | $12,430.65 |
| Equipment Lease with Pitney Bowes (envelope printer) | $0.00 |
| Motor Transportation Contract w/ Pitt Ohio Express | $69.73 |
| Equipment Lease Agreement w/ ProSource | $2,775.91 |
| Distributor Agreement w/ Ryobi Sales (for Japan) | $0.00 |
| Agreement with Sears & Kmart | $0.00 |
| Distribution Agreement w/ Senco Latin America | $0.00 |
| Amended and Restated Consulting/Royalty Agreement with Senco Latin America | $0.00 |
| Distributor Agreement w/ Senco Pneumatic (for Hong Kong) | $0.00 |
| License Agreement w/ Senco Products Japan, Ltd. | $0.00 |
| LicenseAgreementw/ Shantou Sez Senco Metalware | $0.00 |
| Maintenance Proposal w/ Siemens PLM Software | $5,557.83 |
| Service Agreement with Sprint | $17,688.52 |
| Sales Rep - Principle Agreement w/ Stan Tashman & Assoc. | $0.00 |

| Description | Cure Costs |
|---|---|
| 3rd party EDI Admin Contract w/ Sterling Commerce | $58,631.27 |
| Corporate Rebate Agreement w/ Stock Building Supply | $0.00 |
| Quotation w/ Sun Microsystems | $0.00 |
| Lease w/ TBC Rancho Cucamonga (for Rancho Cucamonga California DC) | $30,910.00 |
| Co-op Service Order with The Advertising Checking Bureau | $22,025.00 |
| Promotional Products Agreement with Touchstone Merchandise Group | $0.00 |
| Lease Agreement w/ U.s. Bancorp Business Equipment Finance Group | $0.00 |
| Motor Transportation Contract w/ USF Holland | $0.00 |
| Motor Transportation Contract w/ USF Reddaway | $36,009.00 |
| Share Purchase Agreement with Poppers Holding B.V. regarding Verpa Senco | $0.00 |
| End User License w/ Vertex (incl. Addendum) | $0.00 |
| Motor Transportation Contract w/ Viking Freight | $0.00 |
| Motor Transportation Contract w/ Ward Trucking | $18,571.33 |
| Concurrent User Subscription Agreement with WebEx Communications | $0.00 |
| Consignment Agreement w/ Wick Building System | $0.00 |
| Consignment Agreement w/ Xpress Trucking | $6,770.85 |
| Consulting Agreement with Buddy Sears | $0.00 |
| Consulting Agreement w. Bruce McFarland | $0.00 |
| Sales Rep Agreement w/ C. b. smith Associates | $0.00 |
| Sales Rep Agreement w/ Ed Kelce | $0.00 |
| Master Purchasing Agreement with Midmark | $0.00 |
| Distributor Agreement w/ Senco Korea | $0.00 |
| Sales Rep Agreement w/ TRW Consulting | $0.00 |
| Distribution Agreement (for screws) with Golden Hawk | $0.00 |
| Fee Agreement w/ Aon Risk Services (incl. Amendment) | $0.00 |
| Lease Agreement w/ CUC Investments | $0.00 |
| Patent Option Agreement w/ Interthyr Corporation | $0.00 |
| License Agreement w/ Optosonics | $0.00 |
| Distributorship Agreement w/ Candian Industrial Distributors | $0.00 |
| Sales Rep Agreement w/ Canow-Western | $0.00 |
| Consulting / Royalty Agreement w/ Golden Hawk Industries | $0.00 |
| Consulting/Royalty Services Agreement with Golden Hawk | $0.00 |
| Sales Representative Agreement w/ Pro-Staff Sales | $0.00 |
| Irrevocable Commercial Offer for the Sale and Purchase of Products w/ Senco Latin America | $0.00 |
| Consulting/Royalty Agreement w/ Senco Latin America | $0.00 |
| Employment Agreement w/ Peter van der Wel | $0.00 |
| Master Equipment Lease w/ AT&T Credit Corp (Avaya Financial Services) | $24,535.70 |
| Lease w/ Wagner Land Development (for Elkhart Indiana DC) | $0.00 |
| Winelco Sewage Maintenance Agreement | $0.00 |
| Agreement with ADVIZEX Technologies | $0.00 |
| Global Coexistence Agreement with ITT Water & Wastewater (Sweden) | $0.00 |
| Trademark License Agreement with International Industrial Corp. & Jacobson Van Den Berg (1979) | $0.00 |
| Portions of Technical-Distributorship with International Industrial Corp. & Jacobson Van Den Berg | $0.00 |
| Senco v. Fast CR 2007 Settlement Agreement (Czech Republic) | $0.00 |
| Senco v. SEMCO Brazilian Settlement Agreement (1969) | $0.00 |
| Senco v. Seco Tools Coexistence Agreement in Sweden (1987) | $0.00 |
| Senco v. KC Tools FINISHPRO Global Coexistence Agreement | $0.00 |

| Description | Cure Costs |
|---|---|
| Broadwell Road Sewer Extension Project Contract with Metropolitan Sewer District (incl. Notice of Intent to Acquire) | $0.00 |
| Business Services Agreement with Concur Technologies | $0.00 |
| Loan Tool Investment Program with Oak Creek Homes | $0.00 |
| Rates & Service Agreement with NYK Logistics | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 30204, 30205, 30206, 30226, 30227, 30228) | $40,954.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 30229, 30230, 30234, 30235, 30236, 30237, 30268) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 30233) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 30269) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 30532) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 29391) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 29404) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 29271) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 29290) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 25377) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 28380, 28471) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 28652) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 20127) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 28717, 28718, 28721) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 23496) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 29212) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 25473) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 25474) | $0.00 |
| Fork Lift Truck Lease with Portman Equipment (Nos. 25522) | $0.00 |
| Distributor Agreement w/ Simes-Senco (Spain) | $120,000.00 |
| Dealer and Customer letters of | $0.00 |
| License Agreement w/ TTI | $0.00 |
| Shareholders Agreement with Micronics and its Shareholders | $0.00 |
| Investor Rights Agreement with Micronics and its Shareholders | $0.00 |
| Stockholders Agreement with Argos Therapeutics | $0.00 |
| Amended and Restated Shareholders Agreement with Medennium, Inc. | $0.00 |
| Operating Agreement of Spine Partners LLC between Bret Ferree and Sentron Medical | $0.00 |
| Commencement Agreement with CUC Investments, LLC | $0.00 |
| Real Estate Engagement Letter with Colliers Bennett & Kahnweiler | $0.00 |
| Collaboration Agreement between Nexicor, LLC and IAP Research, Inc., dated April 1, 2007 | $0.00 |
| Letter Agreement between Global Fastening Solutions, LLC and Verst Group Logistics, Inc., dated June 4, 2009* | $0.00 |
| Contract and Rate Quotation between Verst Group Logistics, Inc. and Global Fastening Solutions, LLC, effective June 1, 2009* | $0.00 |
| Collateral Access Agreement executed by Verst Group Logistics, Inc. for the benefit of Bank of America, N.A.* | $0.00 |
| All critical vendor waivers and other related agreements executed by any Seller prior to Closing | $0.00 |
| Service Parts Warehousing Agreement between Senco Products, Inc. and EPAS Group, Ltd., dated June 30, 2009* | $0.00 |